Peter Laborde, by his w:ll, dated in 1820, gave to his daughter, Zelima Dunton, the wife of the complainant, Hollis Dunton, four slaves, then in her possession, and two hundred acres of land “to her and the heirs of her body.” He also, gave her an equal share of the residue of his estate, along with three other children. After the death of the testator, to wit: in 1821, Hollis Dunton conveyed, by deed, to John B. Laborde, the land and slaves, given to his wife by her father's will, and her undivided share, of the residue, in trust, to the joint use of the husband and wife for life; to the survivor for life; after the death of the survivor to the children of the wife, or if she should die without issue, in the life time of her husband, to him absolutely. This deed was duly recorded in the office of the Register of Mesne Conveyances, for Edgefield district, where the parties lived. Another slave was delivered to Mrs. Dunton, by the executors of Peter Laborde, as her share of the residue. In 1828, the complainant, Maximilian Laborde, was substitued trustee, in the place of John B. Laborde, In 18 — , Mrs. Zelima Dunton died, leaving *449 two children, one of whom has since died, leaving a child. The defendants, George L. Penn, et aL are judgment creditors, of Hollis Dunton, who have issued executions, and caused them to he levied on the slaves derived from her father’s estate, with a view of making liable to their demands, the life estate of Hollis Dunton, in the said slaves. The tract of land has also been levied on, exposed to sale by the Sheriff, and bid off for $25, and an action of trespass to try titles, has been commenced against Hollis Dun-ton, for the purpose of recovering the possession. The objects of the bill are, that the defendants may be enjoined from proceeding to sell the slaves, or that the purchasers, at Sheriff’s sale, may be compelled to give security for the forthcoming of the property, at the termination of Dun-ton’s life estate. The bill also prays, that the action of trespass to try titles may be enjoined, with respect to the land. I think, the parties entitled to it need no aid from this Court. There can be no doubt, but that by the will of Peter Laborde, his daughter, Mrs. Dunton, took a fee simple, conditional, in the land devised to her, and the heirs of her body. On her death, then, it vested in her children, as heirs of limitation, performam doni. Supposing the possession then to be recovered from their father, they will have a plain and adequate remedy at law, to recover on their own title.
With regard to the slaves, the question is, whether the conveyance of Hollis Dunton, to John B. Laborde, in trust, must be regarded as- a marriage settlement, and therefore void, for want of recording in the office of the Secretary of State. There is no doubt, but that the four slaves, mentioned in the testator’s will, were reduced into possession by the husband, his marital rights had attached upon them, and his conveyance of them was, therefore, merely voluntary. The case of Price vs. White, Bail. Eq. 244, is an express authority, that a voluntary settlement, made by a husband after marriage, must be regarded as a marriage settlement, and is void, for the want of recording in the Secretary’s office; and this is recognized in the case of Banks vs. Brown, 2 Hill, Ch. 558. The former case also determined, that when the husband makes a settlement of his wife’s interest, in an estate not yet reduecd into his *450 possession, this comes within the provisions of the Act, of 1785, in relation to marriage settlements. Such a settlement is supported by a consideration, analogous to that of a marriage settlement, the wife’s equity; and however much the husband may be indebted, at the time, creditors cannot, if duly recorded, impugn it. In the case of Banks vs. Brown, the Commissioner in equity conveyed to a trustee, for the wife, a house and lot, which was paid for by the administrator of an estate, in which she had an interest. This was held not to come within the Act, apparently on the ground, that it was not the deed of the husband, nor does it appear, that he had any thing to do with the arrangement. By these cases, I must be governed.
It is therefore ordered and decreed, that the bill be dismissed.
WM. HARPER.
From this decree of his Honor, the Chancellor, the complainants appealed and renewed their motion, in the Appeal Court, upon the grounds stated in the decree. The motion in the Appeal Court did not prevail; and the appeal was accordingly dismissed.
The whole Court concurring.